IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JOSE LUIS CARLOS MARTINEZ,**

    **Petitioner,**

vs.                                                           No. CIV 99-672 LH/LCS

**LAWRENCE A. TAFOYA, Warden, and
THE ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO**

    **Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon Petitioner's Application for a Writ of Habeas Corpus, filed June 16, 1999 *(Doc. 1)*. For the reasons stated, I propose finding that the Application should be denied and this action should be dismissed.

### Proposed Findings

1.     Petitioner is currently incarcerated and is proceeding *in forma pauperis*. Counsel was appointed for Mr. Martinez by this Court's Order of October 12, 1999 *(Doc. 23)*. Petitioner is confined pursuant to the Amended Judgment, Sentence and Commitment of the Third Judicial District Court for the County of Doña Ana, State of New Mexico dated May 26, 1998 ("Judgment and Sentence"). By that Judgment and Sentence, Petitioner was convicted of two counts of Criminal Sexual Penetration in the First Degree and one count of Kidnapping. Petitioner was sentenced to eighteen years on each of the criminal sexual penetration charges and

nine years on the kidnapping charge, with two years parole each. The sentences were ordered to run consecutively, for a total of forty-five years imprisonment, to be followed by two years of mandatory parole.

2.      Petitioner's conviction was based on an incident that occurred on May 27, 1995. A ten year old child, "Desi", disappeared from a backyard wedding reception for a period of about twenty minutes.[1] Petitioner admits that he was present at the wedding reception, and videotapes establish that he was wearing a blue pager at the reception. Desi testified at trial that Petitioner pulled her by the wrist away from the wedding reception and into the desert. Desi also testified that Petitioner tore off her underwear and inserted his fingers into her "private part." After a few minutes, according to Desi's testimony, Petitioner penetrated her with his penis.

3.      Desi managed to return to the vicinity of the backyard reception some twenty to thirty minutes later, where she was discovered dirty and bleeding. Her mother and a friend took her to the hospital and the police were called. At the hospital, a rape kit examination was performed. The hospital examination revealed tears to Desi's vulva and vagina consistent with sexual assault. Semen and blood stains were found on Desi's jumper.

4.      A police investigation in the vicinity of the wedding reception discovered the apparent scene of the attack the next morning, some 310 yards from the backyard reception in the desert. At the scene, detectives located Desi's sandals, a blue pager similar to the one worn by Petitioner in the wedding reception videotapes, and a cup similar to the ones used at the reception. A few days after the attack, Desi viewed the videotape of the reception and identified

---

[1] Although the minor child who was the victim of this incident is named in several of the documents filed in this case, the Court does not see a need to invade her privacy further by referring to her by her full name in this decision.

Petitioner as the man who raped her.  Police discovered that the man in the videotape (i.e., Petitioner) had been living in a trailer, and obtained permission to search the trailer.  There, they found clothing matching the clothes Petitioner was wearing in the videotape.  The clothing had blood stains.

5.      At trial, two DNA experts testified for the prosecution that the semen sample and some of the blood on Desi's romper matched Petitioner's DNA type with a probability ration of 1 in 2.4 million.  Although Petitioner's defense attorney cross examined the experts, Petitioner did not present a DNA expert to rebut the testimony.  Petitioner's counsel did present testimony of a state crime lab micro-analyst who determined that a pubic hair found on Desi's sandals did not match Petitioner's pubic hair standard.

6.      Petitioner raises three claims in his petition:

1) Petitioner's conviction for two counts of criminal sexual penetration violated his constitutional rights to due process and to be free from double jeopardy;

2) Petitioner was denied his constitutional rights to due process and to confront a witness because he was not allowed to cross examine a police detective about her conversations with the victim's father, in which the father reported that he saw a man running off from the area;

3) Petitioner's counsel was ineffective because he did not seek the assistance of a DNA expert before trial, did not call a DNA expert to rebut the prosecution's DNA experts at trial, and did not interview or call witnesses who could corroborate Petitioner's testimony that he spent the afternoon prior to the wedding reception drinking beer and was invited to the reception by a friend.

7.      Petitioner filed a direct appeal that raised these claims, as well as a claim that the trial court convicted him of kidnapping as a first degree felony using an incorrect jury instruction. The New Mexico Court of Appeals agreed that the trial court gave the incorrect jury instruction for kidnapping, and ordered Petitioner to be resentenced on the kidnapping charge as a second

degree felony instead. *See* Ex. M to Answer at 11. As to all other issues, the Court of Appeals affirmed the conviction on December 17, 1997. *See id.* at 1. The New Mexico Supreme Court denied certiorari on February 3, 1998. *See* Ex. O to Answer. All parties agree, as does the Court, that state remedies have been exhausted as to the claims in the Petition. *See Smith v. Atkins,* 678 F.2d 883, 885 (10th Cir. 1982) (citing *Sandoval v. Rodriguez*, 461 F.2d 1097, 1098-99 (10th Cir. 1972)).

8.  Petitioner's first claim is that his constitutional protection against double jeopardy was violated when he was sentenced on two counts of criminal sexual penetration based on a single event. Petitioner is correct that the Double Jeopardy Clause of the Fifth Amendment protects against multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). However, the digital penetration was not simultaneous with the penile penetration; under such circumstances, the double jeopardy clause is not necessarily violated. *See Rhoden v. Rowland*, 10 F.3d 1457, 1462 (9th Cir. 1993) (digital penetration followed by intercourse may be punished as two separate crimes without violating double jeopardy clause). The key issue is whether the legislature intended to punish each discrete act as a separate crime, instead of punishing the entire course of conduct as a separate crime. *See Ebeling v. Morgan*, 237 U.S. 625 (1915).

9.  New Mexico courts have developed a six-factor test to determine whether sexual conduct is separate and distinct for the purpose of multiple punishment under its criminal sexual conduct statutes. *See Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991). The six factors include the temporal proximity of the conduct, the victim's location and position during the conduct, whether there was an intervening event, the sequence of events, whether the

defendant manifested different intent during the events, and the number of victims. Neither party disputes that these factors are reasonable indicators of whether the conduct is unitary or distinct, and this court must defer to the New Mexico Supreme Court's interpretation of its legislature's intent. Therefore, I propose finding that applying the *Herron* factors in this case to determine whether conduct is unitary for the purpose of a double jeopardy analysis comports with the United States Constitution.

      10.      The New Mexico Court of Appeals applied the *Herron* factors to the facts of this case and determined that Petitioner's conduct was not unitary, and therefore Petitioner could be sentenced separately for two counts of criminal sexual penetration. *See State v. Martinez*, No. 17,932, slip op. at 6-7 (N.M. Ct. App. Dec. 17, 1997). Because this claim was adjudicated on the merits by the New Mexico Court of Appeals, the provisions of 28 U.S.C. § 2254(d) apply. To prevail, Petitioner must show that his claim resulted in a decision that either was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. __, __, 120 S. Ct. 1495, 1518 (2000) (opinion of the Court as to Part II, except for footnote, contained in opinion of O'Connor, J.). The New Mexico Court of Appeals pointed to evidence that the digital penetration lasted for a significant period of time thereby indicating it was a distinct attack from the subsequent penile penetration; the attacker punched the victim to continue the attack instead of a continuous uninterrupted attack; victim was repositioned between the digital and penile penetration; and there was evidence of a different intent and impulse during the two penetrations. *See Martinez*, slip op. at 6-7 (Ex. M to Answer). All of these factors cited by the New Mexico Court of Appeals

indicate separate offenses.  Although some of the other factors may weigh towards a single offense (i.e., one victim, one orifice penetrated, and total time of the attack less than twenty minutes), it is not the province of this Court to re-weigh the evidence and second guess the New Mexico courts.  It cannot be said that the finding of two separate offenses involved an unreasonable application of clearly established federal law as determined by the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts.

11.     Petitioner did not brief his second claim, that he was denied his constitutional rights to confront witnesses and to due process because the Court refused to allow cross examination of a police officer as to her alleged conversation with the victim's father.  Therefore, this issue is deemed abandoned.  *See Lafevers v. Gibson*, 182 F.3d 705, 725 (10th Cir. 1999).  Had this issue been briefed, it is unlikely that I would have found it to be meritorious.  As the New Mexico Court of Appeals noted in its opinion on direct appeal, the evidence that Petitioner sought to admit (i.e., that the police investigation was not sufficiently thorough because the police did not follow up on reports that there might have been another stranger at the party) was not meaningful when viewed against the overwhelming evidence that it was Petitioner who raped the victim.  Therefore, any error in not admitting the evidence would be harmless beyond a reasonable doubt.

12.     Petitioner's third claim is that his counsel was ineffective at trial because he did not seek the assistance of a DNA expert, did not call a DNA expert at trial to rebut the prosecution's DNA testimony, and failed to call witnesses who could corroborate his testimony that he was invited to the party by a friend with the nickname "Diablo" with whom he had spent the day drinking beer.  Ineffective assistance of counsel claims are analyzed under the two-part test set

out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, Petitioner must establish that his counsel's performance fell below "the wide range of competence demanded of attorneys in criminal cases."  *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996).  Second, Petitioner must establish that he was prejudiced by his counsel's performance, i.e., that there is a reasonable probability that the outcome of the trial would have been different if his counsel's performance had not been deficient.  *See Strickland*, 466 U.S. at 687-88.

        13.     Petitioner cannot establish either prong of the *Strickland* test.  Petitioner does not deny that his trial counsel cross examined the prosecution's two DNA experts thoroughly.  Of particular note, Petitioner's trial counsel called a state crime lab micro-analyst to testify that a pubic hair found on one of the victim's sandals did not match Petitioner's pubic hair standard.  Petitioner also testified at trial that his sperm might have gotten on the victim's clothes because he masturbated before she arrived.  Therefore, it appears that Petitioner's counsel made a strategic decision not to challenge the DNA evidence directly, but instead to raise a doubt in the juror's minds that he was the rapist by presenting evidence that another individual's pubic hair was found on the victim.  A strategic decision of counsel such as this should be afforded deference unless it appears to be clearly unsound.  *See Strickland*, 466 U.S. at 690.  In this case, the decision of Petitioner's trial counsel to challenge the DNA evidence with an explanation and contrary pubic hair evidence appears well within the range of competence expected of trial counsel.  Similarly, the decision of Petitioner's trial counsel not to call witnesses to testify that Petitioner spent the afternoon drinking beer with friends and met an individual known as "Diablo" who invited him to the wedding reception appears reasonable.  It is unclear whether such evidence would assist Petitioner at trial.  At best, it would corroborate his testimony that he was invited to the wedding

reception.  On the other hand, there is no doubt that Petitioner was at the reception, whether invited or not, and admits to kissing the victim there.  Evidence from friends that he was drinking beer all afternoon and associating with individuals who were known only by the nickname of "Diablo" appears just as likely to be prejudicial to Petitioner rather than useful evidence that would support acquittal.  Therefore, Petitioner fails to make a colorable showing of ineffective assistance of counsel as to this alleged deficiency in his counsel's performance.

      14.     Petitioner claims that his counsel's failure to seek the assistance of a DNA expert before trial rises to the level of ineffective assistance of counsel because a decision not to interview a potential witness is not related to trial strategy but rather demonstrates inadequate preparation.  *See Chambers v. Armontrout*, 907 F.2d 825, 828 (8th Cir. 1990).  However, even if I were to agree with Petitioner's argument, Petitioner fails to show prejudice at all.  Petitioner does not show that the blood and semen on the victim's clothes were not his with any reasonable degree of possibility.  In view of Petitioner's testimony that he masturbated himself and therefore his semen could have been on the victim's clothes, and that the victim bit his tongue and therefore his blood could have been found as well, hiring another DNA expert to examine the blood and semen stains would appear to be futile.  Similarly, Petitioner cannot show that any reasonable doubt could be interjected if his trial counsel called witnesses to corroborate his activities with his friends.

      15.     Because Petitioner fails to establish either prong of the *Strickland* test, his ineffective assistance of counsel claim should be dismissed.

<u>Recommended Disposition</u>

I recommend that the Application for Writ of *Habeas Corpus* be denied and this action be dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**United States Magistrate Judge**

F:\aaHabeas Orders\99-672pfd